Filed 8/23/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER HRONCHAK,<br><br>    Defendant and Appellant. | B262866<br><br>(Los Angeles County<br>Super. Ct. No. 5PH01327) |

APPEAL from an order of the Superior Court of Los Angeles County, Robert M. Kawahara, Commissioner.  Affirmed.

Erick Victor Munoz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Mary Sanchez, and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

_____

While serving a 16-month sentence for a felony drug conviction, Christopher Hronchak was resentenced pursuant to Proposition 47 to a misdemeanor, ordered released from prison with 360 days of custody credit and placed on parole for one year. After Hronchak failed to report to his supervising parole agent—a violation of parole supervision conditions that Hronchak admitted—the court revoked and reinstated parole on condition that Hronchak serve an additional 60 days in custody. On appeal Hronchak contends the parole revocation petition should have been denied because adequate consideration was not given to intermediate sanctions as required by Penal Code section 3000.08, subdivision (f).[1] He also argues, even if the revocation petition was properly granted, the court lacked authority to order Hronchak to serve more than four additional days in custody because the maximum confinement time for a misdemeanor drug offense is 364 days and, pursuant to the terms of Proposition 47, his underlying drug conviction must now be "considered a misdemeanor for all purposes" other than limitations on ownership or possession of firearms. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case are undisputed. Hronchak was convicted of possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)) and sentenced to a state prison term of 16 months on September 5, 2014. He was resentenced to a misdemeanor pursuant to section 1170.18, subdivision (b), added to the Penal Code by Proposition 47, effective November 5, 2014, and released from prison on December 22, 2014 with 360 days of custody credit. In resentencing Hronchak the court ordered him to serve one year of supervised parole following his release from custody. (§ 1170.18, subd. (d).)

On January 2, 2015 Hronchak was convicted of possession of paraphernalia used for unlawfully injecting or smoking a controlled substance, a misdemeanor (Health & Saf. Code, § 11364, subd. (a)), and sentenced to 90 days in county jail.[2] He was released

---

[1]    Statutory references are to this code unless otherwise stated.

[2]    Hronchak was apparently convicted of unlawful possession of a deadly weapon at the same time and placed on summary probation for that offense.

2

on Saturday, January 31, 2015. Hronchak failed to report to his supervising parole agent on Monday, February 2, 2015, as required by supervised parole condition 2: "Unless other arrangements are approved in writing, you shall report to your parole agent on the first working day following your release."

On February 5, 2015 Parole Agent Luis Barnfield attempted to contact Hronchak at the residence address Hronchak had provided. (Supervised parole condition 2 also provides, "You shall inform your supervising parole agent of your residence. . . . Any change or anticipated change to your residence shall be reported to your parole agent in advance.") Hronchak's brother advised the agent Hronchak did not live at that residence and said he did not have contact information for him. Barnfield then submitted a warrant request to the Los Angeles Superior Court.

Hronchak was arrested on February 22, 2015. A petition to revoke parole pursuant to section 3000.08, subdivision (f), was filed on February 27, 2015, alleging Hronchak had absconded from parole, failed to report and failed to notify the parole agency of his address. The recommendation from the supervising agency was to return Hronchak to custody for 135 days. The court found probable cause to support revocation and preliminarily revoked parole pending a full hearing. Hronchak was held in custody without bail.

On March 6, 2015, the date set for his parole revocation hearing, Hronchak waived his right to a formal hearing and admitted the violation. His counsel then argued Hronchak was on parole for a misdemeanor and the total time in custody for that offense should not exceed 364 days—the maximum for a misdemeanor. The court acknowledged there was an element of fairness to counsel's position but asked, "Why even place a person on parole? Why does the sentencing court place that person on parole if there's no more time that could be imposed on the parolee?" The court concluded it was not powerless to punish a parole violation but reduced the recommended additional custody time from 135 days to 60 days in county jail (with custody credit for 13 actual days plus

3

13 conduct days). The court found Hronchak in violation, revoked parole supervision and ordered it reinstated upon completion of his jail sanction.

Hronchak filed a timely notice of appeal on March 11, 2015. (See *People v. Osorio* (2015) 235 Cal.App.4th 1408, 1412 (*Osorio*) [parole revocation order is a postjudgment order affecting the substantial rights of the party appealable under § 1237, subd. (b)].) Both the People and Hronchak agree Hronchak has now completed the additional custody time ordered on March 6, 2015 for his parole violation. The Attorney General in her respondent's brief also notes Hronchak's supervised parole period was schedule to end in December 2015.

## DISCUSSION

1. *Hronchak's Challenge to the March 6, 2015 Revocation Order Is Properly Decided by this Court*

The Attorney General argues Hronchak's appeal is moot because he has completed the additional 60-day period of incarceration ordered on March 6, 2015 as a condition of reinstating parole and, in all likelihood, has actually completed the remaining supervised parole period ordered when he was resentenced under Proposition 47. Hronchak responds by citing *Osorio, supra*, 235 Cal.App.4th 1408, in which our colleagues in Division Three of the Fourth Appellate District held the trial court had erred in overruling the defendant's demurrer to a petition for revocation notwithstanding postjudgment evidence that he had been discharged from parole prior to the decision on appeal. Justice Fybel, writing for the court, first explained an appellate court has discretion "to decide a case that, although moot, poses an issue of broad public interest that is likely to recur." (*Id.* at p. 1411.) The court concluded the case before it presented such an issue. The court also suggested that an erroneous parole revocation could have adverse consequences for the defendant in the future: "Should defendant suffer a further criminal conviction, the parole revocation may be used as part of his sentencing determination. The parole revocation also may be used against defendant in other noncriminal arenas, such as employment decisions or child custody matters." (*Id.*

4

at p. 1412.) As a result, Justice Fybel wrote, "we cannot say with reasonable certainty that defendant's release from parole moots his claim . . . ." (*Ibid*.)

The Attorney General urges us not to follow *Osario*. Even if we were inclined to agree the possible collateral consequences of an erroneous parole revocation decision, without more, do not justify deciding an otherwise moot controversy, here, as in *Osario*, the appeal presents a significant issue of first impression involving the proper application of Proposition 47 that is capable of repetition but likely to evade review: whether the sanction for violating a condition of the one-year supervised parole term contemplated by section 1170.18, subdivision (d), may increase a defendant's total custodial time for the reclassified misdemeanor offense beyond 364 days. Accordingly, we exercise our discretion to retain the case for decision. (See *People v. Morales* (2016) 63 Cal.4th 399, 409 (*Morales*) [even though order discharging defendant from parole may have technically mooted case, Supreme Court exercises discretion to decide whether excess credit for time served can be credited against Proposition 47's one-year parole period "because the issue is likely to recur, might otherwise evade appellate review, and is of continuing public interest"]; *In re Lemanuel C.* (2007) 41 Cal.4th 33, 38, fn. 4 [although defendant's extended civil commitment under Welfare and Institutions Code section 1800 et seq. had ended, Supreme Court decided whether commitment procedure was constitutional "because it raise[d] important issues that are capable of repetition but likely to evade review"]; *Alfredo A. v. Superior Court* (1994) 6 Cal.4th 1212, 1218-1219 [Supreme Court decided whether juvenile detainee is entitled to a probable cause determination within 48 hours of a warrantless arrest, although technically moot, because the claim "is distinctly 'capable of repetition, yet evading review'"]; *In re Law* (1973) 10 Cal.3d 21, 23 [Supreme Court decided whether parolee was entitled to bail while on parole hold status although case was technically moot because it "raise[d] a question of broad public interest likely to recur"].)

5

2. *Resentencing Under Proposition 47 and the Imposition of Misdemeanor Parole*

Proposition 47, the Safe Neighborhoods and Schools Act, amended the Penal Code to require a misdemeanor sentence instead of a felony sentence for certain drug possession and theft-related offenses. In addition, Proposition 47 added Penal Code section 1170.18, authorizing a person currently serving a felony sentence for an offense that is now a misdemeanor to petition for recall of his or her sentence to request resentencing in accordance with the provisions added or amended by Proposition 47. (§ 1170.18, subd. (a).)[3]

An individual who successfully petitions for resentencing under Proposition 47 is subject to a one-year term of parole supervision following his or her release from custody pursuant to section 3000.08, part of the 2011 realignment legislation, unless the court in its discretion elects not to impose the parole term: "A person who is resentenced pursuant to subdivision (b) shall be given credit for time served and shall be subject to parole for one year following completion of his or her sentence, unless the court, in its discretion, as part of its resentencing order, releases the person from parole. Such person is subject to Section 3000.08 parole supervision by the Department of Corrections and Rehabilitation and the jurisdiction of the court in the county in which the parolee is released or resides, or in which an alleged violation of supervision has occurred, for the purpose of hearing petitions to revoke parole and impose a term of custody." (§ 1170.18, subd. (d); see *Morales*, *supra*, 63 Cal.4th at pp. 404-405.)

---

[3] Proposition 47 allows a felony sentence (excluding a defendant from a misdemeanor sentence) for the specified crimes if a defendant has a prior conviction for one of the offenses listed under section 667, subdivision (e)(2)(C)(iv), sometimes referred to as "super strikes," or a prior conviction for an offense requiring sex offender registration under section 290. (See *People v. Shabazz* (2015) 237 Cal.App.4th 303, 308 & fn. 2; *People v. Rivera* (2015) 233 Cal.App.4th 1085, 1091.) An individual currently serving a felony sentence who has one of the disqualifying convictions is similarly ineligible for resentencing. In addition, before resentencing an otherwise eligible petitioner, the court must determine whether resentencing would pose an unreasonable risk of danger to public safety. (§ 1170.18, subd. (b).)

If a parole violation occurs, section 3000.08, subdivision (d), permits the supervising parole agency to impose additional conditions of supervision and "intermediate sanctions" without court intervention: "Upon review of the alleged violation and a finding of good cause that the parolee has committed a violation of law or violated his or her conditions of parole, the supervising parole agency may impose additional and appropriate conditions of supervision, including rehabilitation and treatment services and appropriate incentives for compliance, and impose immediate, structured, and intermediate sanctions for parole violations, including flash incarceration in a city or a county jail."[4]

Section 3008, subdivision (f), authorizes a petition to revoke probation only after the supervising parole agency has determined that intermediate sanctions are not appropriate: "If the supervising parole agency has determined, following application of its assessment processes, that intermediate sanctions up to and including flash incarceration are not appropriate, the supervising parole agency shall . . . petition . . . the court in the county in which the parole is being supervised . . . to revoke parole." (See *Osorio*, *supra*, 235 Cal.App.4th at p. 1413 ["less restrictive sanctions for an alleged parole violation must be considered before revocation of parole is sought"].) Section 3008, subdivision (f), requires that a petition to revoke parole include a written report containing relevant information regarding the parolee and the recommendation to revoke parole and directs the Judicial Council to adopt forms and rules of court to implement it. California Rules of Court, rule 4.541(c), in turn, describes the minimum requirements for the written report included with the petition to revoke; and rule 4.541(e) provides, in addition to those minimum contents, the petition "must include the reasons for that agency's determination that intermediate sanctions without court intervention . . . are inappropriate responses to the alleged violations."

---

[4] "'Flash incarceration' is a period of detention in a city or a county jail due to a violation of a parolee's conditions of parole. The length of the detention period can range between one and 10 consecutive days. . . ." (§ 3000.08, subd. (e).)

3. *Intermediate Sanctions Were Appropriately Considered for Hronchak's Violation of His Parole Conditions*

In *Williams v. Superior Court* (2014) 230 Cal.App.4th 636, 665, a case that addressed the procedural protections to which parolees are entitled in revocation proceedings following realignment, the court held, in part, "[the parole agency's] report filed with its revocation petition must state the specific reasons (individualized to the particular parolee, as opposed to a generic statement) for its determination that intermediate sanctions 'are inappropriate responses to the alleged violations.'" (*Id.* at p. 665.) Relying on this portion of the *Williams* holding and the analysis in *Osorio, supra*, 235 Cal.App.4th 1408, in which the Court of Appeal held a demurrer to the parole revocation petition should have been sustained because the petition failed to adequately explain why revocation, rather than a less restrictive sanction, had been selected, Hronchak contends the petition to revoke his parole should have been dismissed for lack of consideration of intermediate sanctions.[5]

Hronchak's argument is without merit. The parole revocation report, in addition to detailing the circumstances of the charge against Hronchak, provided specific reasons intermediate sanctions were considered inappropriate: Hronchak's arrest and conviction for misdemeanor drug and weapons offenses almost immediately after his release from prison and his inability to conform to the requirements of parole: As the report by Agent

---

[5] The parolee in *Osorio, supra*, 235 Cal.App.4th 1408 challenged the adequacy of the report filed with the revocation petition in the trial court. (*Id.* at p. 1410.) Hronchak did not. That omission would usually result in a forfeiture of this issue on appeal. (See generally *People v. Stowell* (2003) 31 Cal.4th 1107, 1114 ["The forfeiture doctrine is a 'well-established procedural principle that, with certain exceptions, an appellate court will not consider claims of error that could have been—but were not—raised in the trial court. [Citation.]' [Citations.] Strong policy reasons support this rule: 'It is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided.'"].) However, the Attorney General, whose office has never been reticent to urge a criminal defendant has forfeited an argument (see, e.g., *People v. Brothers* (2015) 236 Cal.App.4th 24, 33, fn. 6; *People v. Cropsey* (2010) 184 Cal.App.4th 961, 965, fn. 3), has not suggested we decline to review the merits of Hronchak's claim of procedural error.

Barnfield, dated February 26, 2015, explained, "Hronchak was recently released from State Prison on 12/22/14 . . . . It is clearly evident that Hronchak does not value the meaning of freedom and early release. Further, Hronchak should remain in custody since he cannot abide by the law and feels the need to continue in drug use and has armed himself with a dangerous weapon in the community. Hronchak was convicted [in the misdemeanor proceedings after his release from prison]. Hronchak had only been out in the community for 12 days and he cannot show he will succeed in parole supervision. . . . [He] cannot abide by simple directive and report with State Parole. . . ." Nothing more was required to satisfy the requirements of section 3000.08 and rule 4.541.[6]

4. *The Trial Court's Authority Under Sections 1170.18, Subdivision (d), and 3000.08, Subdivision (f), To Revoke and Reinstate Parole on Condition the Parolee Serve Additional Custodial Time Following a Proposition 47 Resentencing Is Not Limited by the 364-Day Maximum Sentence for Misdemeanors*

Section 1170.18, subdivision (k), provides, "[a]ny felony conviction that is recalled and resentenced under subdivision (b) . . . shall be considered a misdemeanor for all purposes, except that such resentencing shall not permit that person to own, possess, or have in his or her custody or control any firearm . . . ." Emphasizing that punishment for a misdemeanor may not exceed 364 days of imprisonment in a county jail (see §§ 18.5 [offense punishable by imprisonment in a county jail up to or not exceeding

---

[6] Hronchak notes the parole report states the agency used the Parole Violation Decision Making Instrument (PVDMI) as its evidence-based tool for a recommendation as to the appropriate measures to impose for Hronchak's parole violation and the recommended response level was "continue on parole with remedial sanctions," rather than "refer for revocation." (Cf. *Osorio*, *supra*, 235 Cal.App.4th at pp. 1413-1414 [explaining development of the PVDMI by the California Department of Corrections and Rehabilitation, Division of Adult Parole Operations].) Unlike in *Osorio*, however, where the appellate court was plainly troubled by revocation of parole based on the relatively minor nature of the parolee's violation ("talking to two gang members for 10 minutes") and the agency's departure from the PVDMI recommendation for a moderately intensive response (*Osorio*, at p. 1415), the parole agency here adequately explained why it was departing from the PVDMI recommendation and seeking revocation and reinstatement of parole with additional custodial time.

9

one year "shall be punishable by imprisonment in a county jail for a period not to exceed 364 days"], 19 [except where a different punishment is prescribed by law, every offense declared to be a misdemeanor is punishable by imprisonment in the county jail not exceeding six months]), Hronchak argues, because he was resentenced to a misdemeanor "for all purposes," the total custody time he can be required to serve must also be 364 days. Since he already had custody credit for 360 days, Hronchak continues, his sanction for violating a condition of parole could not exceed an additional four days.

Hronchak's exclusive focus on the "misdemeanor for all purposes" language in section 1170.18, subdivision (k), fails to acknowledge that an inmate who has petitioned for resentencing under Proposition 47 has agreed to be subject to section 3000.08 parole supervision for one year, unless the court releases the individual from parole, and to court jurisdiction "for the purpose of hearing petitions to revoke parole and impose a term of custody." (§ 1170.18, subd. (d); see *Morales*, *supra*, 63 Cal.4th at p. 403 ["[w]hen it voted on Proposition 47, the electorate was informed, and it intended, that a person who benefitted from the new legislation by receiving a reduced sentence would be placed on parole for one year after completion of the reduced sentence, subject to the court's discretion to release the person from that parole"].) If a parole violation is proved, section 3000.08, subdivision (f)(1), specifically authorizes the court to "[r]eturn the person to parole supervision with modifications of conditions, if appropriate, including a period of incarceration in county jail"—exactly what happened in this case. Section 3000.08, subdivision (g), in turn, limits confinement for a parole violation pursuant to subdivision (f)(1) to no more than 180 days in county jail—substantially more than the 60 days actually imposed on Hronchak—without reference to the time in custody the parolee had previously served. That the total time in custody may ultimately exceed 364 days if the resentenced defendant/parolee violates a condition of parole is simply part of the agreed-upon exchange for resentencing under Proposition 47. (See *Morales*, at p. 409 [felon petitioning for relief under Proposition 47 cannot claim the benefits of an ameliorative change in the law but refuse to accept the price; "[t]he voters

10

could rationally conclude that those who receive the benefit of a new misdemeanor sentence could at least be placed on parole when released on the reduced sentence"]; see generally see generally *People v. Gonzalez* (2014) 60 Cal.4th 533, 537 [in construing a statute the court does not consider words in isolation but looks to the entire substance of the statute to determine the scope and purpose of the provision at issue]; *People v. Acosta* (2002) 29 Cal.4th 105, 112 ["'[w]e must harmonize "the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole "'"].)[7] That possibility does not in any way detract from the statutory mandate that the reclassified offense is to be considered a misdemeanor conviction for all purposes (except with respect to possessing firearms).

Indeed, whether or not the individual ever violates the conditions of his or her parole, the imposition of a one-year parole term under section 1170.18, subdivision (d), following a successful petition for resentencing necessarily creates an aggregate sentence that is different from, and more restrictive than, the basic misdemeanor sentence. (*Morales*, *supra*, 63 Cal.4th at p. 407; see Couzens & Bigelow, Proposition 47, "The Safe Neighborhoods and Schools Act" (May 2016), pp. 61-62 ["It appears the intent of the initiative is to authorize the one-year period of parole supervision *in addition to* any resentence imposed by the court . . . . [T]he parole term is in addition to the basic misdemeanor sentence . . . ."].) Hronchak does not—and could not—argue the one-year parole term itself, mandated by the express language of Proposition 47, violates the "misdemeanor for all purposes" provision of the initiative. By parity of reasoning, imposition of additional time in custody as a sanction for violating valid conditions of that parole, as expressly authorized by sections 1170.18, subdivision (d), and 3000.08, subdivision (f), is also fully consistent with treating the reclassified conviction as a misdemeanor for future purposes.

---

[7] "In construing statutes adopted by the voters, we apply the same principles of interpretation we apply to statutes enacted by the Legislature." (*People v. Johnson* (2015) 61 Cal.4th 674, 682.)

As the trial court observed, Hronchak's interpretation of the parole provisions of Proposition 47 would create a largely meaningless period of post-release supervision with conditions and restrictions imposed on the parolee but no effective means for the parole agency or court to enforce them.[8] Yet an effective one-year parole term for a resentenced offender (unless the trial court in its discretion declined to impose parole) was an integral part of the reform proposal presented to the voters in Proposition 47—a recognition that "the period immediately following incarceration is critical to successful reintegration of the offender into society and to positive citizenship." (§ 3000, subd. (a)(1).) The voter information guide specifically informed voters that "[o]ffenders who are resentenced would be required to be on state parole for one year, unless the judge chooses to remove that requirement." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), Resentencing of Previously Convicted Offenders, p. 36; see Couzens & Bigelow, *supra*, at p. 61 ["[i]t is likely the provision for a period of parole was included in Proposition 47 as a response to some of the criticisms of Proposition 36 that no transition period was required for persons suddenly released from a 25-years-to-life sentence after many years in custody"].) We decline to frustrate the voters' intent by adopting a strained construction of section 1170.18 that deprives the parole agency and the courts of the ability to effectively supervise inmates subject to parole following completion of their newly imposed, Proposition 47 misdemeanor sentence.

---

[8] Although Hronchak insists the parole agency, faced with a parole violation, could "consider intermediate sanctions which include the 'teeth' of flash incarceration," he fails to explain under his interpretation of the statutory language why a 10-day period of flash incarceration would be permissible for an individual with 360 days of custody credit.

## DISPOSITION

The order is affirmed.

PERLUSS, P. J.

We concur:

ZELON, J.

SEGAL, J.