Filed 5/15/17; pub. order 5/30/17 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B271406 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 6PH01157) |
| v. | |
| RAYMOND ZAMUDIO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robert M. Kawahara, Judge. Affirmed.

Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson and Idan Ivri, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

After overruling Raymond Zamudio's demurrer to the petition for revocation of parole filed by the Los Angeles County District Attorney's Office and denying his motion for an assessment whether imposition of intermediate sanctions would be appropriate, the superior court found Zamudio in violation of the conditions of his parole, revoked parole and ordered it restored after Zamudio had served 150 days in county jail.  On appeal Zamudio contends the ability of a district attorney to petition for revocation of parole without first completing certain procedural steps and including in the petition information required when a revocation petition has been filed by the supervising parole agency violates his and other parolees' right to equal protection of the law under the state and federal constitutions.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case are undisputed.  On September 4, 2013 Zamudio was convicted of making a criminal threat (Pen. Code, § 422)[1] and sentenced to a two-year state prison term.  On April 29, 2014 he was released on parole.

On January 16, 2016 Zamudio assaulted the mother of his children.  One month later the district attorney's office petitioned to revoke Zamudio's parole pursuant to section 1203.2 and requested issuance of an arrest warrant.  The petition for revocation consisted of a completed copy of Judicial Council form CR-300, a one-page attachment describing the domestic violence incident and a two-page list of Zamudio's juvenile and adult criminal history offenses.  No other documents were filed with the petition.

---

[1]     Statutory references are to this code.

2

On February 16, 2016 the superior court found probable cause to support revocation, preliminarily revoked parole pending a full hearing and issued an arrest warrant. The arrest warrant was recalled once Zamudio appeared in court. He was remanded into custody.

Zamudio demurred to the petition and filed a "motion for sanctions," that is, a motion to require consideration by the supervising parole agency of the imposition of intermediate sanctions before pursing parole revocation. Zamudio argued the district attorney's parole revocation petition violated his right to equal protection because it did not comply with section 3000.08 and California Rules of Court, rule 4.541 (rule 4.541), as required for parole revocation petitions filed by the California Department of Corrections and Rehabilitation, Division of Adult Parole Operations, the supervising parole agency.[2]

After the superior court overruled the demurrer and denied the motion for sanctions on March 16, 2016, Zamudio waived his right to a parole revocation hearing and admitted the violation. The court revoked parole supervision and ordered it reinstated on the same terms and conditions as before upon Zamudio's completion of 150 days in county jail (with 46 days of custody credits).

---

[2] The alternate public defender who represented Zamudio represented another parolee, Ignacio Castel, and also filed a demurrer and motion for assessment of intermediate sanctions in his parole revocation proceedings, which were pending in the same superior court department as Zamudio's. The court and counsel agreed the briefing, oral argument and ruling issued in Castel's case, heard immediately before Zamudio's, would be "incorporated into this case because the issues are identical."

Zamudio filed a timely notice of appeal, challenging the ruling on his demurrer and motion for sanctions. (See *People v. Osorio* (2015) 235 Cal.App.4th 1408, 1412 (*Osorio*) [parole revocation order is a postjudgment order affecting the substantial rights of the party and appealable under § 1237, subd. (b)].) The superior court granted Zamudio's request for a certificate of probable cause.

Zamudio's appointed appellate counsel filed an opening brief in which no issues were raised. (See *People v. Wende* (1979) 25 Cal.3d 436, 441.) After independently examining the record, we asked the parties to submit supplemental briefing addressing whether the superior court had erred in overruling Zamudio's demurrer and denying his motion, given that section 3000.08, subdivision (f), and rule 4.541(e) require certain minimum information be provided in a petition to revoke parole, including a written report by the supervising parole agency explaining "the reasons for that agency's determination that the intermediate sanctions without court intervention . . . are inappropriate responses to the alleged [parole] violations." (See *Osorio, supra,* 235 Cal.App.4th at p. 1413.)[3]

---

[3] Although technically moot because Zamudio has completed the additional 150-day period of incarceration ordered as a condition of reinstating parole, we exercise our discretion to consider the issue presented. It is capable of repetition, might otherwise evade review and is of continuing public interest. (See *People v. Hronchak* (2016) 2 Cal.App.5th 884, 889-890; *Osorio, supra,* 235 Cal.App.4th at pp. 1411-1412.)

# DISCUSSION

1. *Governing Law*

The Legislature in 2011 enacted and amended "'a broad array of statutes concerning where a defendant will serve his or her sentence and how a defendant is to be supervised on parole,'" referred to generally as the realignment legislation. (*Williams v. Superior Court* (2014) 230 Cal.App.4th 636, 650.) The overall purpose of the realignment legislation was to decrease recidivism and improve public safety, while at the same time reducing corrections and related criminal justice spending. (*People v. Cruz* (2012) 207 Cal.App.4th 664, 679; see § 17.5 [legislative findings and declarations regarding recidivism].)

As enacted by the realignment legislation, new section 3000.08 and an amended version of section 1203.2 became central elements of the system for parole supervision and revocation. Together with rule 4.451, these statutes provide the framework for parole eligibility, enforcement of parole supervision conditions and procedures to revoke parole in the event of a violation.

If a parole violation occurs, section 3000.08, subdivision (d), permits the supervising parole agency to impose additional conditions of supervision and "intermediate sanctions" without court intervention: "Upon review of the alleged violation and a finding of good cause that the parolee has committed a violation of law or violated his or her conditions of parole, the supervising parole agency may impose additional and appropriate conditions of supervision, including rehabilitation and treatment services and appropriate incentives for compliance, and impose immediate, structured, and intermediate sanctions for parole

5

violations, including flash incarceration in a city or a county jail."[4]

Section 3000.08, subdivision (f), authorizes the supervising parole agency to petition to revoke parole only after the agency has determined that intermediate sanctions are not appropriate: "If the supervising parole agency has determined, following application of its assessment processes, that intermediate sanctions up to and including flash incarceration are not appropriate, the supervising parole agency shall, pursuant to Section 1203.2, petition . . . the court in the county in which the parolee is being supervised . . . to revoke parole." (See *Osorio, supra*, 235 Cal.App.4th at p. 1413 ["less restrictive sanctions for an alleged parole violation must be considered before revocation of parole is sought"]; *People v. Hronchak* (2016) 2 Cal.App.5th 884, 891 [same].)

Section 3000.08, subdivision (f), requires a petition to revoke parole filed by the supervising parole agency to include a written report containing relevant information regarding the parolee and the recommendation to revoke parole and directs the Judicial Council to adopt forms and rules of court to implement it. Rule 4.541(c), in turn, describes the minimum requirements for the written report included with the supervising parole agency's petition to revoke; and rule 4.451(e) provides, in addition to those minimum contents, the petition "must include the reasons for that agency's determination that intermediate

---

[4]  "'Flash incarceration,' is a period of detention in a city or a county jail due to a violation of a parolee's conditions of parole. The length of the detention can range between one and 10 consecutive days. . . ." (§ 3000.08, subds. (d) & (e).)

sanctions without court intervention . . . are inappropriate responses to the alleged violations."

Section 1203.2, as amended by the realignment legislation, governs the procedure for revocation of various forms of supervision, including both probation and parole. As pertinent here, section 1203.2, subdivision (b)(1), authorizes the "parole officer, or the district attorney" to petition to modify or revoke parole. That subdivision further provides, upon filing of a petition, "[t]he court shall refer . . . the petition to the . . . parole officer. After the receipt of a written report from the . . . parole officer, the court shall read and consider the report and . . . the petition and may modify [or] revoke" parole supervision "if the interests of justice so require." Subdivision (g) of section 1203.2 expressly provides that nothing in the section "affect[s] the authority of the supervising agency to impose intermediate sanctions, including flash incarceration, to persons supervised on parole pursuant to Section 3000.08."

If a parolee is found in violation of the conditions of parole, a court is authorized to (1) return the parolee to parole supervision with a modification of conditions, if appropriate, including a period of incarceration in county jail of up to 180 days for each revocation (§ 3000.08, subds. (f)(1), (g)); (2) revoke parole and order the person to confinement in the county jail for up to 180 days (§ 3000.08, subds. (f)(2), (g)); (3) refer the parolee to a reentry court pursuant to section 3015 or other evidence based program in the court's discretion (§ 3000.08, subd. (f)(3)); or (4) place the parolee on electronic monitoring as a condition of reinstatement on parole or as an intermediate sanction in lieu of returning the parolee to custody (§ 3004, subd. (a)).

7

## 2. *Zamudio's Challenge to the Sufficiency of the Parole Revocation Petition Was Properly Denied*

In the superior court Zamudio first argued in his demurrer that the district attorney's petition to revoke parole was deficient because it did not include the minimum information required by section 3000.08, subdivision (f), and rule 4.541(c) and (e). (See *Osorio*, *supra*, 235 Cal.App.4th at p. 1415 [superior court should have sustained demurrer to the petition for revocation because it failed to include the reasons for the determination by the supervising parole agency that intermediate sanctions without court intervention were an inappropriate response to the allege parole violation].) However, as Zamudio appears to concede on appeal, neither section 3000.08. nor rule 4.541 applies to petitions filed by the district attorney. As discussed, although section 1203.2 addresses revocation petitions filed by either a parole officer or the district attorney, by its terms section 3000.08 applies only to parole revocation petitions filed by the "supervising parole agency." Similarly, rule 4.541 expressly applies to "supervising agency petitions for revocation of formal probation, parole, mandatory supervision under Penal Code, section 1170(h)(5)(B) and postrelease community supervision under Penal Code section 3455." (Rule 4.541(a).) Accordingly, the district attorney is not obligated to file revocation petitions with the written report mandated by those provisions, nor must the petition state why intermediate sanctions are not considered appropriate.

Although section 3000.08 and rule 4.451 do not apply to a district attorney's petition to revoke parole, the Legislature ensured the court's evaluation of the petition would not be conducted without input from the supervising parole agency.

Section 1203.2, subdivision (b)(1), requires the court to refer a district attorney petition, once filed, to the parolee's parole officer for a written report that must be considered by the court when deciding whether to modify or revoke parole.

To be sure, section 1203.2 does not describe the contents of the written report, nor does it refer to, or incorporate, the minimum requirements for the report mandated by section 3000.08, subdivision (f).  Nonetheless, given subdivision (g), of section 1203.2, which preserves the supervising parole agency's authority to impose less restrictive sanctions, the parole officer's report under subdivision (b)(1) should include an intermediate sanctions assessment.  Even if not required by statute or the Rules of Court, the best practice would be for the parole officer to address the appropriateness of intermediate sanctions to assist the court in exercising its discretion in the interest of justice.  Such an assessment would also serve as a check on potentially overzealous deputy district attorneys or parole officers.  (See *Williams v. Superior Court, supra,* 230 Cal.App.4th at p. 664).  However, when, as here, the alleged parole violation also constitutes a new felony offense, particularly one involving violence, or when the parolee has absconded from parole, it may well be reasonable for the court to determine intermediate sanctions would be inappropriate without a formal assessment.  In any event, the parole revocation petition filed against Zamudio was not insufficient as a matter of law because the district attorney was not obligated to include the written report mandated by section 3000.08, subdivision (f), and rule 4.541.

3.  *The Statutory Scheme Under Which the District Attorney's Petition Was Filed Does Not Violate Parolees' Right to Equal Protection of the Law*

While asserting in superior court that the district attorney's petition was defective because it failed to include the information required by section 3000.08, subdivision (f), and rule 4.541, Zamudio also argued, as he again does on appeal, that, by applying only to petitions filed by the supervising parole agency and not the district attorney, those provisions deprive him (and other parolees responding to district attorney petitions) of important procedural protections, including an intermediate sanctions assessment, provided other, similarly situated parolees. That disparate treatment, Zamudio contends, based solely on which entity has filed the revocation petition, violates the federal and state constitutions' guarantee of equal protection.

To prevail on an equal protection challenge, a party must first establish that "'the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.'" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.) If such a classification of similarly situated individuals exists and does not affect a fundamental right or a legally suspect class, the next inquiry is whether the classification is rationally related to a legitimate government interest. If so, it must be upheld against an equal protection challenge: "Where, as here, a disputed statutory disparity implicates no suspect class or fundamental right, 'equal protection of the law is denied only where there is no "rational relationship between the disparity of treatment and some legitimate governmental purpose."' [Citation.] 'This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve. Nor must the underlying rationale be empirically substantiated.

10

[Citation.] While the realities of the subject matter cannot be completely ignored [citation], a court may engage in "'rational speculation'" as to the justifications for the legislative choice [citation]. It is immaterial for rational basis review "whether or not" any such speculation has "a foundation in the record.'" . . . If a plausible basis exists for the disparity, courts may not second-guess its "'wisdom, fairness, or logic.'"" (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881; see *Warden v. State Bar* (1999) 21 Cal.4th 628, 644 [when the challenged statutory classification of similarly situated individuals "neither proceeds along suspect lines nor infringes fundamental constitutional rights," it "must be upheld against [an] equal protection challenge *if there is any reasonably conceivable state of facts that could provide a rational basis for the classification*"].)

Here, as the Attorney General suggests, it is entirely plausible to posit that revocation petitions filed by the district attorney will concern parolees whose violations involve the commission of a new felony while petitions filed by the supervising parole agency will largely consist of more minor or technical violations. As such, the two groups of parolees are not similarly situated. But even if they were, as Zamudio assumes, it is entirely rational for the Legislature to have concluded parole revocation procedures should be different depending upon which entity files the petition. Because the district attorney generally seeks parole revocation as the result of parolees' criminal conduct, the Legislature could reasonably conclude there would be far fewer instances in which intermediate sanctions would be appropriate for these more serious offenders. Furthermore, the Legislature could properly recognize that the district attorney,

11

unlike the supervising parole agency, does not have the resources to conduct intermediate sanctions assessments.

Zamudio argues many parolees whose alleged criminal violations are nonviolent felonies or misdemeanors still come within the district attorney's purview and they would likely benefit from less restrictive sanctions. Those parolees, he contends, should be entitled to an intermediate sanctions assessment. If the district attorney is not in a position to conduct such assessments, that office should be prohibited from filing petitions to revoke parole.

Zamudio's argument fails to recognize that, in reality, no significant difference exists between the revocation procedures for the two groups of parolees. If the supervising parole agency handles the violation and files a petition to revoke parole, it must also file a report containing an intermediate sanctions assessment for the court to review under section 3000.08 and rule 4.451. If the district attorney's office is evaluating the crime and a possible parole violation hearing, nothing in the statutes prevents that office from referring the matter to the supervising agency to evaluate the case and assess the appropriateness of sanctions other than revocation or a criminal prosecution. However, if the district attorney elects to file a revocation petition, the court must then order a report from the supervising parole agency, which should include an intermediate sanctions assessment for the court to review. Although the procedural steps occur in a different order, parolees subject to a filing by the district attorney lose no substantive protections under the relevant provisions merely because the report follows, rather than accompanies, the filing of the petition to revoke parole. There is no equal protection violation.

In sum, the superior court did not err in overruling the demurrer and denying the motion for sanctions.

## DISPOSITION

The order is affirmed.


PERLUSS, P. J.


We concur:



ZELON, J.



SEGAL, J.

Filed 5/30/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RAYMOND ZAMUDIO,<br><br>    Defendant and Appellant. | B271406<br><br>(Los Angeles County<br>Super. Ct. No. 6PH01157)<br><br>ORDER CERTIFYING<br>OPINION FOR<br>PUBLICATION |

THE COURT:

The opinion in this case filed May 15, 2017 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), Appellant's request pursuant to California Rules of Court, rule 8.1120(a) for publication is granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

_____

PERLUSS, P. J.            ZELON, J.            SEGAL, J.