Filed 10/8/25  P. v. Hull CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

DOMINIQUE DUPREE HULL,

    Defendant and Appellant.

E084003

(Super.Ct.No. BPR2400482)

OPINION

APPEAL from the Superior Court of Riverside County.  Sylwia Luttrell, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed in part, reversed in part, and remanded with instructions.

James M. Kehoe, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General, Robin Urbanski and Flavio Nominati, Deputy Attorneys General, for Plaintiff and Respondent.

1

After a contested hearing, the trial court found Dominique Dupree Hull in violation of his parole and remanded him to the custody of the California Department of Corrections and Rehabilitation (CDCR). On appeal, Hull makes two arguments. First, he argues the trial court abused its discretion by remanding him to CDCR's custody because his parole agent did not adequately consider intermediate sanctions. Second, he argues one of the conditions of his parole was unconstitutionally vague. The People concede that the challenged condition was unconstitutionally vague but argue the parole agent adequately considered intermediate sanctions. We agree with the People, and therefore reverse in part, affirm in part, and remand to allow the trial court to strike or modify the offending condition.

BACKGROUND

In 2013 Hull was convicted of committing lewd acts with a minor under the age of 14 (Pen. Code § 288, subd. (b)(1))[1] and participating in a criminal street gang. (§ 186.22, subd. (a).) He was sentenced to 15 years in state prison but was released on parole in July 2023. His parole will expire in 2043.

As part of his parole, Hull agreed to two relevant parole conditions. The first, condition 18, forbade Hull from having "contact with a person you know or reasonably should know is a co-defendant or other arrestees of your offense(s). 'No contact' means no contact in any form, whether direct or indirect, personally, by telephone, in writing, electronic media, computer through another person, etc." Another, condition 31, forbade

---

[1] Unlabeled statutory citations are to the Penal Code.

Hull from "view[ing], possess[ing], or hav[ing] access to any sexually oriented or sexually stimulating objects, articles, magazines and/or devices, or pornographic material in any format, including electronic communication devices (e.g., movies, photographs, drawings, literature, websites, texts, etc.)"

In 2024 Hull's co-defendant was arrested for violating his parole. Personnel from the Department of Adult Parole Operations (DAPO) searched the co-defendant's phone, including his social media and call logs, and discovered that Hull and his co-defendant were friends on social media and talked on the phone multiple times in March 2024.

DAPO then arrested Hull, and searched his phones and tablet. Hull had deleted his text history, call history, and social media accounts, but DAPO personnel found several photographs on his phone that they believed violated Condition 31. Hull's parole officer then checked Hull's and his co-defendant's GPS monitors, and found that they were near each other outside a hospital in March 2024, around the same dates as the phone calls in co-defendant's phone. According to the parole agent, Hull admitted he met his co-defendant outside the hospital while they were both visiting a friend who was shot, though Hull later denied making this admission.

In April 2024, DAPO filed a petition for revocation, alleging Hull violated conditions 18 and 31, as well as a third condition not at issue here. The petition recommended revoking Hull's parole because he incurred 11 violations since his release, he left transitional housing early, consistently declined to participate in any recommended programs, did not have housing or employment, and was not participating in his sex

3

offender treatment plan. DAPO used the Parole Violation Decision Making Instrument (PVDMI) to assess this recommendation, and the PVDMI agreed revocation was appropriate. The petition also stated that DAPO "considered remedial sanctions such as the California State Re-Entry Initiative (CSRI) and Specialized Treatment for Optimized Programming (STOP), which were deemed inappropriate for the current violation."

The court held a contested revocation hearing in May 2024. The parole agent and Hull testified, among others. When asked about intermediate sanctions, the parole agent responded DAPO "considered remedial sanctions such as a referral to the jail STOP program, or the CSRI program. But due to the severity and escalating nature of the violations, we recommended a probable cause hearing." After the prosecution finished presenting its evidence, Hull moved to dismiss the petition on the basis that DAPO had not considered intermediate sanctions. The court denied the motion, stating "[t]he agent testified that the reason why they decided they were inappropriate was the escalating nature of the violations. That was the reasoning."

After hearing testimony from the parole agent, Hull, and others, the court determined there was good cause to believe Hull violated conditions 18 and 31 and remanded him to CDCR's custody.

ANALYSIS

Hull makes two arguments contesting the decision to revoke his parole. First, he argues condition 31, which prohibits him from possessing explicit or pornographic materials, is unconstitutionally vague. Second, he argues DAPO did not adequately

4

consider intermediate sanctions before recommending revocation. The People agree condition 31 is unconstitutionally vague but argue DAPO adequately considered intermediate sanctions.

### 1. Condition 31 is Unconstitutionally Vague

Generally, we review a trial court's imposition of probation conditions for abuse of discretion. (*People v. Olguin* (2008) 45 Cal.4th 375, 379.) But where, as here, a defendant challenges a probation condition on constitutional grounds, we review its constitutionality de novo. (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.) "The criteria for assessing the constitutionality of conditions of probation also applies to conditions of parole." (*In re Stevens* (2004) 119 Cal.App.4th 1228, 1233.)

"[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.' " (*In re Sheena K.*, (2007) 40 Cal.4th 875, 890.) "The vagueness doctrine bars enforcement of ' "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." [Citation.]' [Citation.] A vague law 'not only fails to provide adequate notice to those who must observe its strictures, but also "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." [Citation.]' " (*Ibid.*) Thus, "[a] probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the

5

ground of vagueness." (*Ibid.*)  Where a term or condition of probation is unconstitutionally vague, a reviewing court has the power to modify it to render it constitutional.  (*Id.* at p. 892.)

Restrictions on a parolee's ability to possess sexually explicit materials are particularly susceptible to challenge for vagueness, given the inherent difficulty in defining such material.  (See, e.g., *People v. Turner* (2007) 155 Cal.App.4th 1432, 1436 ["The phrase 'sexually stimulating/oriented material deemed inappropriate by the probation officer' is an inherently imprecise and subjective standard."] (*Turner*).)  However, courts have determined that such conditions are not vague if they contain an express knowledge requirement.  That is, a condition may pass constitutional muster if it first requires that the parole officer expressly identify which materials are prohibited.  This is because "[t]he fact that the probation officer may deem material sexually explicit or pornographic *after* defendant already possesses the material would produce a situation where defendant could violate his probation without adequate notice."  (*People v. Pirali* (2013) 217 Cal.App.4th 1341, 1352 (*Pirali*).)  To meet this requirement, courts have generally modified such conditions to require that the probation or parole officer first identify prohibited materials as prohibited before a parolee or probationer may be held liable for possessing those materials.  (See, e.g., *Pirali* at p. 1353; *Turner*, *supra*, 155 Cal.App.4th at pp. 1436-1438; *People v. Connors* (2016) 3 Cal.App.5th 729, 738.)

However, even this modification will not save a condition which seeks to prohibit "pornography."  This is because "the term 'pornography' is inherently vague," and "a

6

modification requiring [the parolee] to know or to be informed in advance that materials are 'pornography' fails to address the term's *inherent* vagueness." (*In re D.H.* (2016) 4 Cal.App.5th 722, 728-729.) While it is possible for a condition which references pornography to define that term sufficiently well that it will pass constitutional muster—for instance by defining it as "materials having ' "a primary purpose of causing sexual arousal" ' "—using the term without such a definition renders the condition necessarily vague. (*People v. Gruis* (2023) 94 Cal.App.5th 19, 26 (*Gruis*).)

Hull's condition 31 suffers from both these fatal defects. It has no express knowledge requirement; nothing required Hull to know ahead of time that the materials are prohibited. It also uses the term "pornographic materials" without further defining that term. Accordingly, we agree with the parties that this condition is unconstitutionally vague and vacate the court's order finding that Hull violated it.

The remaining question is what to do about the term. "Although we have the power to modify probation conditions to render them constitutional," we find the better approach is to remand for the trial court "to either strike the no-pornography condition or modify it consistent with the views expressed in this opinion." (*Gruis*, *supra*, 94 Cal.App.5th at p. 26.) If the court chooses to modify the condition, it should include an express knowledge requirement and either strike the reference to "pornographic materials" or else define it "with the 'primary purpose' or similar phrasing . . . that would distinguish the prohibited materials from those depicting sexual conduct but having primarily literary, artistic, political, or scientific value." (*Ibid.*) It may also wish to

7

clarify whether the condition extends not only to material in defendant's possession, but also to his control of any prohibited materials.  (See *id.* at p. 26, fn. 4.)

### 2.  *DAPO Adequately Considered Intermediate Sanctions*

Hull contests whether the parole agent adequately considered intermediate sanctions instead of revocation.  We reject the argument.

A demurrer is the proper mechanism to challenge a parole agent's claim that intermediate sanctions were considered and found inappropriate.  (See *People v. Perlas* (2020) 47 Cal.App.5th 826, 832 (*Perlas*).)  Hull did not file a demurrer, which can be grounds for forfeiture.  (*People v. Hronchak* (2016) 2 Cal.App.5th 884, 892 fn. 5 [defendant did not file a demurrer, and "[t]hat omission would usually result in a forfeiture of this issue on appeal"].)  Hull, however, moved to dismiss after close of the prosecution's case because DAPO failed to adequately consider intermediate sanctions before petitioning to revoke his parole.  The People suggest that Hull's challenge be "deemed to be a demurrer."  We agree with that approach, and therefore turn to the argument's merits.

" ' " '[A] demurrer raises an issue of law as to the sufficiency of the accusatory pleading, and it tests only those defects appearing on the face of that pleading.' [Citation.]" [Citations.]  On appeal, we review the order overruling [a] defendant's demurrer de novo.  We exercise our independent judgment as to whether, as a matter of law, the petition alleged sufficient facts to justify revocation of [a] defendant's parole.' "  (*Perlas*, *supra*, 47 Cal.App.5th at p. 832.)

A supervising parole agency may only petition to revoke parole if it "has determined, following application of its assessment processes, that intermediate sanctions up to and including flash incarceration are not appropriate." (§ 3000.08, subd. (f).) For this reason, the California Rules of Court require that "a report filed by the supervising agency in conjunction with a petition to revoke parole . . . must include the reasons for that agency's determination that intermediate sanctions without court intervention as authorized by Penal Code section[] 3000.08(f) . . . are inappropriate responses to the alleged violations." (Cal. Rules of Court, rule 4.541(e).)

We agree with the trial court that DAPO's report met the requirements of section 3000.08 and rule 4.541(e). The law requires only that the parole agent submit a report alongside the petition for revocation stating that they considered intermediate sanctions and found them inappropriate given the allegations. The report here satisfies that requirement. It states that DAPO "considered remedial sanctions," what sanctions it considered, and its reason for rejecting these intermediate sanctions. Specifically, it says DAPO rejected intermediate sanctions because "[t]he negative outweighs the positive when Hull is congregating with codefendants, minors, and pornography," Hull demonstrated no intention of complying with parole conditions generally, and "the severity of the violations appears to be escalating, placing the community at unnecessary risk." This satisfies the requirements that the parole agency consider intermediate sanctions and state why those sanctions were rejected.

9

Hull argues this case is like *People v. Osorio* (2015) 235 Cal.App.4th 1408 (*Osorio*), disapproved on other grounds in *People v. DeLeon* (2017) 3 Cal.5th 640. In that case, the defendant was accused of violating his parole by associating with gang members for ten minutes. (*Id.* at pp. 1410-1411.) The defendant filed a demurrer arguing the parole agents had not adequately considered intermediate sanctions, which the trial court denied. (*Id.* at pp. 1411-1413.) The court, reviewing de novo, concluded the facts alleged in the petition were insufficient to justify revocation, even though the defendant conceded the violation. (*Id.* at pp. 1414-1415.) In particular, the court felt that the nature of the alleged violation—a 10-minute meeting with other gang members—was not serious enough to warrant revocation. (*Id.* at p. 1415.) It therefore reversed the trial court's order denying the demurrer. (*Id.* at pp. 1415-1416.)

This case differs from *Osorio* because DAPO alleged multiple, serious violations, not a single violation based on a short period of contact with a prohibited person. Because the requirement to consider and reject intermediate sanctions is a threshold requirement to file a petition for revocation, we consider whether that requirement was met in the context of alleged violations, no matter how many of those allegations were sustained by the trial court and survived appeal. Here, the alleged violations constituted a significant escalation in violative behavior, not a minor violation, so DAPO's rejection of intermediate sanctions was reasonable.

Accordingly, we affirm the trial court's decision denying Hull's motion to dismiss.

DISPOSITION

We reverse and vacate the trial court's finding that Hull violated condition 31 of his parole and its order revoking his parole.  We remand to allow the trial court to either strike condition 31 or modify it in accord with this decision, and to consider whether to revoke parole based on the sole remaining violation.  In all other respects, we affirm.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL            
                                                 J.

We concur:


RAMIREZ            
                    P. J.


FIELDS              
                    J.